Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN HAMBY, <br><br> Plaintiff, <br><br> v. <br><br> SELECT BANCORP, INC., J. GARY CICCONE, ALICIA SPEIGHT HAWK, GERALD W. HAYES, WILLIAM L. HEDGEPETH II, RONALD V. JACKSON, JOHN W. MCCAULEY, CARLIE C. MCLAMB, JR., V. PARKER OVERTON, SHARON L. RAYNOR, K. CLARK STALLINGS, and W. LYNDO TIPPETT, <br><br> Defendants. | Case No: <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff John Hamby ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Select Bancorp, Inc. ("Select" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

1

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Select by First Bancorp.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Select common stock.

7. Defendant Select operates as the bank holding company for Select Bank & Trust Company that provides banking services to individuals and small to medium-sized

businesses. The Company is incorporated in North Carolina. The Company's common stock trades on the NASDAQ under the ticker symbol, "SLCT."

8. Defendant J. Gary Ciccone ("Ciccone") is Chairman of the Board of the Company.

9. Defendant Alicia Speight Hawk ("Hawk") is a director of the Company.

10. Defendant Gerald W. Hayes ("Hayes") is a director of the Company.

11. Defendant William L. Hedgepeth II ("Hedgepeth") is President, Chief Executive Officer, and a director of the Company.

12. Defendant Ronald V. Jackson ("Jackson") is a director of the Company.

13. Defendant John W. McCauley ("McCauley") is a director of the Company.

14. Defendant Carlie C. McLamb, Jr. ("McLamb") is a director of the Company.

15. Defendant V. Parker Overton ("Overton") is a director of the Company.

16. Defendant Sharon L. Raynor ("Raynor") is a director of the Company.

17. Defendant K. Clark Stallings ("Stallings") is a director of the Company.

18. Defendant W. Lyndo Tippett ("Tippett") is a director of the Company.

19. Defendants Ciccone, Hawk, Hayes, Hedgepeth, Jackson, McCauley, McLamb, Overton, Raynor, Stallings, and Tippett are collectively referred to herein as the "Individual Defendants."

20. Defendants Select and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On June 1, 2021, Select and First Bancorp announced the signing of a definitive merger agreement under which First Bancorp would acquire Select in an all-stock transaction.

Subject to the terms of the merger agreement, Select shareholders will receive 0.408 shares of First Bancorp's common stock for each share of Select common stock. The press release announcing the Proposed Transaction states, in pertinent part:

### First Bancorp to Acquire Select Bancorp, Inc.

Joint News Release - For Immediate Release: June 1, 2021

NEWS PROVIDED BY
**First Bancorp**
Jun 01, 2021, 17:15 ET

SOUTHERN PINES, N.C. and DUNN, N.C., June 1, 2021 /PRNewswire/ -- First Bancorp (Nasdaq: FBNC), the parent company of First Bank, and Select Bancorp, Inc. ("Select") (Nasdaq: SLCT), the parent company of Select Bank and Trust Company ("Select Bank"), announced today the signing of a definitive merger agreement under which First Bancorp will acquire Select in an all-stock transaction with a total current value of approximately $314.3 million, or $18.10 per share, based on First Bancorp's stock price as of May 28, 2021.

The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2021 and is subject to customary conditions, including shareholder and regulatory approval. Subject to the terms of the merger agreement, Select shareholders will receive 0.408 shares of First Bancorp's common stock for each share of Select common stock.

Select Bank currently operates twenty-two banking locations in North Carolina, South Carolina, and Virginia and has the leading community bank market share in Fayetteville, NC and a presence in the key North Carolina growth markets of Raleigh, Charlotte, and Wilmington. As of March 31, 2021, Select reported assets of $1.8 billion, loans of $1.3 billion, and deposits of $1.6 billion. The acquisition complements First Bank's existing footprint and provides entry into several new markets.

"Select Bank is a high quality institution with a long-standing history of service and strong community banking relationships," said Richard Moore, Chief Executive Officer of First Bancorp. "We are thrilled that the Select Bank team will be joining First Bank, and we look forward to the opportunity to serve their customers."

Upon completion of the acquisition, the combined company is expected to have over $9 billion in assets, $6 billion in loans, and $8 billion in deposits. This transaction represents an opportunity to further cement First Bank's position as the

preeminent community bank in North Carolina in a way that is attractive for all stakeholders involved.

"We are very excited about this partnership and the unique opportunity it presents," said Bill Hedgepeth, President, CEO, and Director of Select. "We have long admired First Bancorp, and our combined company will be positioned to capitalize on an enhanced presence in exceptional markets, talent, and financial strength."

Keefe, Bruyette & Woods, Inc. served as financial advisor to First Bancorp and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP provided legal counsel. Raymond James & Associates, Inc. served as financial advisor to Select Bancorp, Inc., and Wyrick Robbins Yates & Ponton LLP served as legal counsel.

**INVESTOR PRESENTATION**

Further information on the terms of this transaction will be included in Form 8-Ks to be filed by First Bancorp and Select Bancorp, Inc. with the Securities and Exchange Commission (the "SEC").

**First Bancorp**

First Bancorp is the holding company for First Bank and is headquartered in Southern Pines, North Carolina. The company currently operates 102 bank branches, with 96 branches operating in North Carolina and 6 branches in South Carolina (Cheraw, Dillon, Florence, and Latta).

**Select Bancorp, Inc.**

Select Bancorp, Inc. is the holding company for Select Bank & Trust Company and is headquartered in Dunn, North Carolina. The company currently operates 22 full-service banking locations in North Carolina, South Carolina, and Virginia.

22.   On July 2, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.   The Registration Statement, which recommends that Select shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Select's, First Bancorp's, and the combined company's financial projections; (ii) the financial

5

analyses performed by Select's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Raymond James; (iv) the sales process leading up to the Proposed Transaction; and (v) potential conflicts of interest involving Company insiders.

24. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Select's Reasons for the Merger; Recommendation of the Select Board; and (iii) Opinion of Select's Financial Advisor.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Select shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Select's, First Bancorp's, and the Combined Company's Financial Projections**

26. The Registration Statement omits material information concerning Select's, First Bancorp's, and the combined company's financial projections.

27. The Registration Statement provides that, in connection with its fairness opinion, "Raymond James . . . reviewed certain information related to the historical condition and prospects of Select and First Bancorp, as made available to Raymond James by or on behalf of Select, including, but not limited to, (a) financial projections for each of Select and First Bancorp certified by the management of Select (which we refer to in this section together, as the "Projections") and (b) certain forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other pro forma financial adjustments expected to result from the merger, which were

authorized and reviewed by the management of Select (which we refer to in this section as the "Pro Forma Financial Adjustments")[.]" *See* Registration Statement at 46.

28. Yet, the Registration Statement fails to disclose any of Select's, First Bancorp's, or the combined company's financial projections, despite the fact that such projections were prepared by Select management and were relied upon by Raymond James in connection with its fairness opinion and related financial analyses. This information is further material as Select shareholders are expected to own a percentage of the combined company, but without Select's, First Bancorp's, and the combined company's financial projections, the Company's shareholders cannot adequately evaluate and assess the value of Select, First Bancorp, or the combined company.

29. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Raymond James' Analyses

31. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Raymond James.

32. The Registration Statement fails to disclose the following concerning Raymond

7

James' "*Discounted Cash Flow Analysis*": (1) the Projections and cash flows used in the analysis, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) multiples ranging from 13.0x to 15.0x, and (ii) discount rates ranging from 11% to 13% and from 10% to 12%; and (3) the range of terminal values for Select and First Bancorp in 2025.

33. With respect to Raymond James' "*Selected Companies Analysis*" and "*Selected Transaction Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction Raymond James observed in its analyses.

34. The Registration Statement fails to disclose the following concerning Raymond James' "*Pro Forma Impact Analysis*": (1) the closing balance sheet estimates as of December 31, 2021 for First Bancorp and Select; (2) the projections used in the analysis; (3) the Pro Forma Financial Adjustments; (4) the estimated financial impact of the Proposed Transaction on certain projected financial results; and (5) the extent to which the Proposed Transaction could be dilutive to Select's estimated TBV per share, as adjusted for the exchange ratio reflected in the merger consideration, at December 31, 2021, but accretive to Select's estimated 2022 and 2023 earnings per share and estimated 2022 dividends per share.

35. The valuation methods, underlying assumptions, and key inputs used by Raymond James in rendering its purported fairness opinion must be fairly disclosed to Select shareholders. The description of Raymond James' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Select shareholders are unable to fully understand Raymond James' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's

shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Raymond James

36. The Registration Statement omits material information concerning potential conflicts of interest involving Raymond James.

37. The Registration Statement fails to disclose the specific timing and nature of the past services Raymond James and/or its affiliates provided Select, First Bancorp, and/or their affiliates, including the amount of compensation Raymond James received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

38. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

40. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

41. The Registration Statement provides that, "[o]n April 15, 2021, Select executed a

9

mutual non-disclosure agreement with Bank B."

42. The Registration Statement, however, fails to disclose the terms of the Company's non-disclosure agreement with Bank B, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Bank B from making a superior offer for the Company.

43. Without this information, Select shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Select shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 5. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

45. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

46. The Registration Statement provides the following concerning management, consultants, and directors of the combined company following consummation of the Proposed Transaction:

> *New Employment Agreements and New Consulting Agreements*
>
> In connection with the execution of the merger agreement, First Bancorp and First Bank entered into employment agreements and consulting agreements dated as of June 1, 2021, with William L. Hedgepeth II, President and Chief Executive Officer of Select and Select Bank, and Lynn H. Johnson, Executive Vice President and Chief Operating Officer of Select and Select Bank. Copies of the employment agreements and consulting agreements are attached to, and

10

incorporated by reference into, this joint proxy statement/prospectus as Annexes D, E, F and G.

The employment agreements provide for the employment of Mr. Hedgepeth and Ms. Johnson as Executive Vice Presidents of First Bank, for a period commencing upon the effective time of the merger and ending June 30, 2022 and June 11, 2022, respectively. Mr. Hedgepeth will receive a base salary of $428,911.68. Ms. Johnson will receive a base salary of $294,262.56. In addition, as compensation for additional duties and responsibilities to be assigned to the executives in connection with the conversion of the core processing and other systems of Select Bank to those of First Bank and the integration of Select Bank's operations and employees into those of First Bank each executive will receive a bonus of $100,000 on the last day of his or her employment period. Also, as consideration for agreeing to certain additional non-compete and non-solicit covenants for a period following the end of such executive's employment (which we refer to as the "restricted period"), Mr. Hedgepeth will receive the sum of $400,000 for the portion of the restricted period beginning July 1, 2022 and ending June 30, 2023, and an additional sum of $300,000 for the portion of the restricted period beginning July 1, 2023 and ending June 30, 2024; and Ms. Johnson the sum of $150,000 for the restricted period beginning June 12, 2023 and ending June 11, 2024. These restrictive covenant payments will be paid to the executives on a monthly basis during the applicable restricted period.

The consulting agreements provide that the executives will provide consulting services and advice to First Bancorp and First Bank (which we refer to as the "First Bancorp Group") for a period of two years following the expiration of the employment period under their respective employment agreements. Mr. Hedgepeth will receive a consulting fee at a rate of $8,333 per month as compensation for the consulting services and all work performed by him for the First Bancorp Group. Ms. Johnson will receive a consulting fee at a rate of $12,500 during the first 12 months, and $8,333 per month during the final 12 months, as compensation for the consulting services and all work performed by her for the First Bancorp Group.

* * *

*Appointment of Select Directors*

As of the effective time of the merger, First Bancorp will increase the size of the First Bancorp board to 14 members and appoint two current members of the Select board, as designated by Select and approved by First Bancorp, to the boards of directors of First Bancorp and First Bank. Select has designated, and First Bancorp has approved, [•] and [•] to be appointed to the boards of First Bancorp and First Bank. Members of the First Bancorp board are expected to receive compensation consistent with the compensation paid to current non-employee directors of First Bancorp, as described in the definitive proxy statement for First

Bancorp's 2021 annual meeting of shareholders, which was filed with the SEC on March 23, 2021, and is incorporated by reference into this joint proxy statement/prospectus. For 2021, such compensation included an annual cash retainer fee of $32,000 and a grant of shares of First Bancorp common stock with a value of approximately $32,000.

47. The Registration Statement, however, fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

48. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

53. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the false and misleading Registration Statement.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 22, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*